[No. 19397. Department Two. October 9, 1925.]

THE STATE OF WASHINGTON, *Appellant,* v. LOUIS F. HART, *Respondent.*[1]

BRIBERY (2)—INFORMATION—ELEMENTS OF OFFENSE—SUFFICIENCY. An information for bribery or asking a bribe, under Rem. Comp. Stat., § 2321, is insufficient to state an offense, where it charges the governor of the state with the crime of asking a bribe by requesting attorneys, employed by the state in the liquidation of an insolvent bank, to pay him a gratuity or reward from the assets of the bank which was to be added to their bill and claimed by them for services in addition to the amount due them; since it fails to charge, as required by such act, that the matter of fixing the attorney's fees was or could be pending before him, or that his vote or action could be influenced by the promise of such payment.

BRIBERY (1)—STATUTES (58)—CONSTRUCTION—MEANING OF LANGUAGE—QUALIFYING WORDS AND PHRASES. Under Rem. Comp. Stat., § 2321, defining bribery or asking a bribe by three classes of officers, executive, legislative, and judicial with others not specified, construed with reasonable strictness as a penal act, relative and qualifying words and phrases apply to the last antecedent only, and the words "to do or omit any act or proceeding, or neglect or violate any official duty" following the third class has no application to executive and administrative officers of the first class.

Appeal from a judgment of the superior court for Pierce county, Teats, J., entered June 9, 1925, upon sustaining a demurrer to the information, dismissing a prosecution for asking a bribe. Affirmed.

*J. W. Selden, Frank D. Nash,* and *D. D. Schneider,* for appellant.

*Hayden, Langhorne & Metzger,* for respondent.

FULLERTON, J.—The respondent, Hart, was informed against in the superior court of Pierce county for the crime of asking a bribe. A demurrer was interposed to the information on the ground that it did not state facts sufficient to constitute a crime. The demurrer

[1]Reported in 239 Pac. 834.

was sustained by the trial court, whereupon the prosecuting attorney elected to stand thereon and refused to plead further. A judgment of dismissal was thereupon entered, from which judgment the appeal before us is prosecuted. The ultimate question therefore is, do the facts stated in the information constitute a crime.

The information, omitting the formal parts, is in the following words:

"Comes now J. W. Selden, prosecuting attorney for the county and state aforesaid and represents and shows that the superior court is in session in said county, and the grand jury is not in session, and that Louis F. Hart has committed the crime of asking a bribe and is not already under indictment therefor, and by this information accuses the said Louis F. Hart of the crime of asking a bribe, committed as follows, to-wit:

"That the said Louis F. Hart in the county of Pierce, in the state of Washington, on or about the 17th day of October, 1924, then and there being, unlawfully and feloniously, and being the duly elected, qualified and acting governor of the state of Washington and while acting for said state and in the business of the state, did then and there directly ask from the liquidator of the Scandinavian American Bank, of Tacoma, a banking corporation, and his attorneys, a gratuity or reward upon an understanding that he, the said Louis F. Hart, would do an act and enter into a proceeding in violation of his official duty in this, to-wit: that the said Louis F. Hart did unlawfully, feloniously and directly ask from Guy E. Kelly and Forbes P. Haskell, Jr., that they pay to him a certain sum of money, the exact amount of which was not specified, from the assets of the Scandinavian American Bank, of Tacoma, a banking corporation organized under the laws of the state of Washington which bank had failed and closed its doors on the 15th day of January, 1921, and was then in the process of liquidation, with Forbes P. Haskell, Jr., as liquidator and Guy E. Kelly, Thomas Mac-

Mahon and Frank D. Oakley as attorneys for said liqui-
dator; that the asking for said money by Louis F. Hart
was with an understanding on the part of said Louis F.
Hart, Forbes P. Haskell, Jr., and Guy E. Kelly
that said money was not to be paid out of the final
fees to be allowed the liquidator and his attorneys, but
that they, the said liquidator and his attorneys, were to
add an amount of money to said fees over and above
the amount actually claimed by them to be due for their
services rendered in liquidating the assets of said bank,
and that the amount of money so added and taken from
the assets of said bank funds and not claimed as fees
due the liquidator and his attorneys, was to be turned
over to said Louis F. Hart, and it was then and there
understood between the three parties as aforesaid that
Louis F. Hart would accept said sum of money so to
be paid to him from the assets of said bank in violation
of his official duty; he the said Louis F. Hart well know-
ing at the time that the fund from which said sum of
money was to be taken was a trust fund created from
the assets of said bank and that said fund was then
being held by the liquidator for the benefit of deposit-
ors of said bank, and that he the said Louis F. Hart
had rendered no service entitling him to ask for or
to receive said sum of money, contrary to the form of
the statute in such cases made and provided, and
against the peace and dignity of the state of Wash-
ington.''

The provision of the statute on which the informa-
tion is based is found at § 2321 of Rem. Comp. Stat.,
and reads as follows:

''Every executive or administrative officer or person
elected or appointed to an executive or administrative
office who shall ask or receive, directly or indirectly,
any compensation, gratuity or reward, or any promise
thereof, upon an agreement or understanding that his
vote, opinion or action upon any matter then pending,
or which may by law be brought before him in his of-
ficial capacity, shall be influenced thereby; and every
member of either house of the legislature of the state
who shall ask or receive, directly or indirectly, any

compensation, gratuity or reward, or any promise thereof, upon an agreement or understanding that his official vote, opinion, judgment or action shall be influenced thereby, or shall be given in any particular manner, or upon any particular side of any question or matter upon which he may be required to act in his official capacity; and every judicial officer, and every person who executes any of the functions of a public office not hereinbefore specified, and every person employed by or acting for the state or for any public officer in the business of the state, who shall ask or receive, directly or indirectly, any compensation, gratuity or reward, or any promise thereof, upon an agreement or understanding that his vote, opinion, judgment, action, decision or other official proceeding shall be influenced thereby, or that he will do or omit any act or proceeding or in any way neglect or violate any official duty, shall be punished by imprisonment in the state penitentiary for not more than ten years, or by a fine of not more than five thousand dollars, or by both.''

It will be observed from an examination of the statute that it includes within its provisions every public officer, every person who executes any of the functions of a public office, and every employee of the state, whether employed by the state direct or by any public officer in the business of the state. It will be further observed that it divides the persons who are brought within its provisions into three distinct classes, and following each division it prescribes the acts which are denounced as a crime. Since it is alleged that the defendant was the duly elected and acting governor of the state when he committed the acts charged against him, and since the governor is the chief executive officer of the state, the acts committed, to constitute a crime, must fall within some one or more of the prescribed acts following the class into which executive officers are included. This class is the first of the classes enumerated. To constitute the offense therein

denounced he must ask or receive, directly or indirect-
ly, some compensation, gratuity or reward, or some
promise thereof, upon an agreement or understanding
that his vote, opinion or action upon some matter then
pending, or which may by law be brought before him in
his official capacity, shall be influenced thereby.

Comparing the allegations of the information with
the provisions of the statute, it is at once apparent that
it falls far short of stating any act which constitutes a
violation of this clause of the statute.  While it is al-
leged that the defendant asked the liquidator of the in-
solvent bank named and the attorneys of the liquidator
to add a certain sum of money to their fees as such
liquidator and attorneys, and pay the money over to
him, it is not alleged that the matter of fixing the fees
of these officers was then pending before him, or that
it might by law be brought before him, or that there
was any agreement or understanding that his vote,
opinion or action in the matter should be influenced by
the promise of such payment.  These are essential ele-
ments of the crime denounced by the statute, and with-
out an allegation in some form that the matter was
pending before him, or that it might be brought before
him in his official capacity, and that there was an agree-
ment or understanding that his vote, opinion or action
thereon should be influenced thereby, plainly no crime
is stated.

Statutes of this sort are common to most of the states
of the Union, and, in so far as we are advised, the rule
is general that there must be a duty required to be
performed in relation to the matter charged by the of-
ficer or person who solicits the bribe before he can be
brought within the purview of the statute.  It is per-
haps unnecessary to add that in this state the gov-
ernor has nothing to do with fixing the fees of a liqui-
dator or the attorneys of a liquidator of an insolvent

bank. This duty is imposed upon an officer known as the supervisor of banking, subject to the approval of the court in which the insolvency proceedings are pending. Rem. Comp. Stat., § 2271. The governor has no more concern therewith than has any other officer of the state.

But the prosecuting attorney contends that the information can be sustained under the provisions of the third class into which the legislature has seen fit to divide the officers and persons affected by the statute; the argument being that the concluding clause of that division includes all of the officers and persons enumerated in the statute, those in the preceding classes as well as those to which it only apparently relates. But to this, we think, there are at least two sufficient answers. In the first place, the contention violates one of the usual and ordinary rules of statutory construction. The rule is that relative and qualifying words and phrases, grammatically and legally, where no contrary intention appears, refer solely to the last antecedent. Sutherland on Statutory Construction, § 267. In this instance there is nothing to indicate that the legislature intended the somewhat general language used in defining the offense of the last class of officers and persons to apply to each of the preceding classes. On the contrary, the inference is clearly the other way. There would have been but little need of classification at all if such were the intent, and no need of following each classification with a statement of the acts constituting the offense. In this connection it is well to remember that the statute is highly penal, that a violation of its provisions can be punished by a long imprisonment and a heavy fine, and that in such cases the statute must be construed with reasonable strictness.

In the second place, we cannot think the information would be aided were we to adopt the construction of the

prosecuting attorney. In this third class are included judicial officers, persons who execute the functions of a public office, and persons who are employed by or acting for the state, or are employed by or acting for any public officer in the business of the state. The acts denounced as a crime are the asking or receiving, directly or indirectly, any compensation, gratuity or reward, or any promise thereof, upon an agreement or understanding that his vote, opinion, judgment, action, decision or other official proceeding shall be influenced thereby, or that he will do or omit any act or proceeding, or in any way neglect or violate any official duty. It is the latter clause of this sentence which it is claimed the act set forth in the information violates, and that this alone will subject the violator, if he he an executive or administrative officer, to the penalty prescribed by the statute. But we cannot assent to this interpretation of the statute. In our opinion, the doing or omitting to do must be of some official act imposed upon the officer, and, as we have hereinbefore shown, the executive of the state had no official duty with relation to the matters set forth in the information.

The learned trial court did not err in sustaining the demurrer to the information, and its judgment will be affirmed.

TOLMAN, C. J., PARKER, HOLCOMB, and MITCHELL, JJ., concur.