

FILE
IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE NOV 09 2017
Fairhurst, CJ.
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Nov 9, 2017

Susan L. Carlson
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WASHINGTON IN | No. 94209-9 |
| JIN ZHU, | |
| Plaintiff, | EN BANC |
| v. | |
| NORTH CENTRAL EDUCATIONAL SERVICE DISTRICT – ESD 171, | Filed: NOV 09 2017 |
| Defendant. | |

YU, J.— Washington law prohibits employers from discriminating against job applicants and employees on the basis of protected characteristics such as race, sex, or national origin. Washington law also prohibits employers from engaging in retaliatory discrimination against employees who previously opposed the employer's discriminatory practices. The question presented in this case is whether prospective employers are nevertheless free to engage in retaliatory

discrimination in the hiring process. In the precise words of the district court, "Does RCW 49.60.210(1) create a cause of action for job applicants who claim a prospective employer refused to hire them in retaliation for prior opposition to discrimination against a different employer?" Order Certifying Local Law Questions to Wash. Supreme Ct., *Jin Zhu v. N. Cent. Educ. Serv. Dist. – ESD 171,* No. 2:15-CV-00183-JLQ, at 7 (E.D. Wash., Feb. 28, 2017) (Order Certifying Question).

The answer is yes. In accordance with the plain language of the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, retaliatory discrimination against job applicants by prospective employers is prohibited by RCW 49.60.210(1). Therefore, plaintiff Jin Zhu's claim that defendant North Central Educational Service District – ESD 171 (ESD 171) refused to hire him because of his opposition to his former employer's racial discrimination stated a valid cause of action.[1]

FACTUAL AND PROCEDURAL BACKGROUND

A.     *Jin Zhu v. Waterville School District No. 209*

Waterville School District No. 209 hired Zhu as a math teacher in 2006. In 2010, Waterville issued a notice of probable cause for Zhu's discharge, which he

---

[1] ESD 171's briefing refers to "Zin Zhu." Def.'s Opening Br. at 1. We defer to the plaintiff's spelling of his own name.

appealed. The hearing officer determined that there was not probable cause for discharge and restored Zhu to his position. *Jin Zhu v. Waterville Sch. Dist. No. 209,* No. CV-10-0333-LRS, 2012 WL 220273, at *2 (E.D. Wash. Jan. 25, 2012) (court order). Zhu then sued Waterville in federal district court, alleging that Waterville had subjected him to racially motivated disparate treatment, a hostile work environment, and retaliation in violation of 42 U.S.C. §§ 1983, 2000e-2, and 2000e-3. *Id.* at *1.

Zhu is a United States citizen who emigrated from China in 2004. His complaint alleged that he filed multiple grievances with Waterville regarding hostile and abusive actions by his students. For instance,

> Zhu described being called a chink, a communist, and gay by his students; in 2008 Zhu was the subject of a cartoon that depicted a border patrol shooting someone described as a communist chink; and in May, 2009 a student scrawled a hateful racial attack against Zhu on a bathroom wall, saying he hoped Zhu's new house would burn down.

*Id.* at *3 n.2. Zhu alleged that instead of attempting to remedy the situation, Waterville took retaliatory actions against him for filing the grievances, including attempting to discharge him without probable cause. After the district court denied Waterville's motion for summary judgment dismissal, the parties settled and Zhu resigned from Waterville in March 2012.

B.    *Jin Zhu v. North Central Educational Service District – ESD 171*

Three months after resigning from Waterville, Zhu applied for a position as a "Math-Science Specialist" with ESD 171. Pretrial order, *Zhu v. N. Cent. Educ. Serv. Dist –ESD 171*, No. 2:15-CV-00183-JLQ, at 1 (E.D. Wash. Sept. 8, 2016). ESD 171 is an educational service district that "[p]rovide[s] cooperative and informational services to local school districts," including Waterville, RCW 28A.310.010(1), and it is undisputed that members of ESD 171's hiring committee were aware of Zhu's lawsuit against Waterville. Zhu was one of three candidates interviewed, but ESD 171 ultimately hired a different candidate, whom Zhu claims was far less qualified for the position. Zhu sued ESD 171 in federal district court, alleging that it refused to hire him in retaliation for his prior lawsuit against Waterville, thereby violating WLAD's antiretaliation statute, RCW 49.60.210(1), as well as other state and federal laws.

ESD 171 moved for summary judgment dismissal, asserting that Zhu's WLAD antiretaliation claim should fail for the same reasons that his federal antiretaliation claim should fail. However, the district court correctly noted that WLAD is not identical to federal law, analyzed the WLAD antiretaliation claim on its merits, and denied summary judgment. ESD 171 moved to reconsider, arguing that Zhu's WLAD antiretaliation claim must fail because RCW 49.60.210(1) does not prohibit retaliatory discrimination against job applicants by prospective

4

employers. The court denied reconsideration. Following a jury trial, Zhu prevailed on his WLAD antiretaliation claim and was awarded damages.

ESD 171 then filed a motion for judgment as a matter of law or for a new trial, challenging the sufficiency of the evidence and the jury instructions, and asking in the alternative that the district court certify to us the question of RCW 49.60.210(1)'s scope. Despite its earlier ruling denying reconsideration, the district court granted the motion in part and certified the following question regarding the scope of RCW 49.60.210(1) to this court: "Does RCW 49.60.210(1) create a cause of action for job applicants who claim a prospective employer refused to hire them in retaliation for prior opposition to discrimination against a different employer?" Order Certifying Question at 7. The court otherwise denied the motion, ruling that

> [i]f the Washington Supreme Court finds RCW 49.60.210(1) provides a cause of action to a prospective employee against a prospective employer not involved in the underlying discrimination claim the jury verdict in this case will be upheld. If the Washington Supreme Court finds RCW 49.60.210(1) does not provide such a cause of action, the jury verdict in this case will be vacated.

*Id.*

## ISSUES

A.    "Does RCW 49.60.210(1) create a cause of action for job applicants who claim a prospective employer refused to hire them in retaliation for prior opposition to discrimination against a different employer?" *Id.*

B.    Is Zhu entitled to attorney fees on review?

ANALYSIS

WLAD "create[s] a private cause of action against any employer engaging in an 'unfair practice.'" *Kumar v. Gate Gourmet, Inc.*, 180 Wn.2d 481, 489, 325 P.3d 193 (2014) (emphasis omitted) (quoting *Griffin v. Eller*, 130 Wn.2d 58, 63, 922 P.2d 788 (1996)). RCW 49.60.210(1) provides that it is an actionable unfair practice for "*any* employer . . . to discharge, expel, or otherwise discriminate against *any* person because he or she has opposed any practices forbidden by this chapter." (Emphasis added.)

By rendering a verdict in Zhu's favor, the jury has already decided as a question of fact that ESD 171 refused to hire Zhu because of his opposition to Waterville's discriminatory practices.[2] *See Jin Zhu v. N. Centr. Educ. Serv. Dist. – ESD 171*, No. 2:15-CV-00183-JLQ, 2016 WL 7428204, at *12 (E.D. Wash. Dec. 23, 2016) (court order). The certified question asks only whether, as a matter of law, the cause of action created by RCW 49.60.210(1) prohibits retaliatory discrimination in hiring, as well as in existing employment relationships.

In accordance with the plain language of RCW 49.60.210(1) and WLAD as a whole, the answer is yes. And because the federal district court already ruled that

---

[2] The standard of causation for WLAD antiretaliation claims is whether "retaliation was a substantial factor behind the [defendant's] decision." *Allison v. Hous. Auth.*, 118 Wn.2d 79, 95, 821 P.2d 34 (1991).

6

if we answer in the affirmative, then "the jury verdict in this case will be upheld," Zhu is entitled to attorney fees on review in accordance with RAP 18.1(a) and RCW 49.60.030(2). Order Certifying Question at 7.

A.    The answer to the certified question is yes

Since its inception in 1949, WLAD has always contained an antiretaliation statute. LAWS OF 1949, ch. 183, § 7(4). Like all antiretaliation statutes, RCW 49.60.210(1)'s primary purpose is "[m]aintaining unfettered access to statutory remedial mechanisms." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997). As we have previously recognized, "[p]eople will be less likely to oppose discrimination by bringing claims or testifying if this court does not provide them some measure of protection against retaliation." *Allison v. Hous. Auth.*, 118 Wn.2d 79, 94, 821 P.2d 34 (1991). Thus, in order to encourage people to oppose discrimination, RCW 49.60.210(1) provides in full:

> It is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.

Very few opinions by this court have discussed this provision, and no Washington court has considered whether RCW 49.60.210(1) prohibits retaliatory discrimination against job applicants by prospective employers.

7

We decide this certified question of statutory interpretation as a matter of law. *Allen v. Dameron,* 187 Wn.2d 692, 701, 389 P.3d 487 (2017). In order to give effect to the legislature's intent, we begin with the statute's plain language.[3] *Dep't of Ecology v. Campbell & Gwinn, LLC,* 146 Wn.2d 1, 10, 43 P.3d 4 (2002). When interpreting WLAD, we are particularly mindful that "a plaintiff bringing a discrimination case in Washington assumes the role of a private attorney general, vindicating a policy of the highest priority." *Marquis v. City of Spokane,* 130 Wn.2d 97, 109, 922 P.2d 43 (1996). To further this important purpose, both the legislature and Washington courts require that even in a plain language analysis, WLAD's provisions must be given "liberal construction." *Id.* at 108 (citing RCW 49.60.020).

1.    The ordinary meaning of the plain language of RCW 49.60.210(1) shows that the answer is yes

The plain language of RCW 49.60.210(1), in and of itself, strongly indicates that the answer to the certified question is yes. That statute provides that it is an unfair practice for "any employer . . . [to] discriminate against any person because he or she has opposed any practices forbidden by this chapter." Therefore, if (1) ESD 171 is an employer, (2) Zhu is a person, (3) refusal to hire is

---

[3] ESD 171 contends that a plain meaning analysis is inappropriate because the district court already ruled that RCW 49.60.210(1) is ambiguous. *See N. Centr. Educ. Serv. Dist.,* 2016 WL 7428204, at *11. However, our review is de novo and we may answer certified questions of state statutory interpretation based on the statutes' plain language without finding any ambiguity. *E.g., Lopez Demetrio v. Sakuma Bros. Farms, Inc.,* 183 Wn.2d 649, 656, 355 P.3d 258 (2015).

discrimination, and (4) suing for racial discrimination is opposition to practices forbidden by WLAD, then RCW 49.60.210(1) clearly applies to Zhu's claim.

First, for purposes of WLAD, an "employer" is broadly defined as "any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons, and does not include any religious or sectarian organization not organized for private profit." RCW 49.60.040(11). ESD 171 is clearly "any employer" in accordance with that definition, as there is no dispute that it employs eight or more people and is not a religious or sectarian organization.

Next, as to whether Zhu is a person, WLAD defines a "person" in extremely broad terms to include

> one or more individuals, partnerships, associations, organizations, corporations, cooperatives, legal representatives, trustees and receivers, or any group of persons; it includes any owner, lessee, proprietor, manager, agent, or employee, whether one or more natural persons; and further includes any political or civil subdivisions of the state and any agency or instrumentality of the state or of any political or civil subdivision thereof.

RCW 49.60.040(19). Zhu is obviously a person.

Third, while WLAD does not define "discrimination," it would defy the ordinary meaning of that word to hold that it excludes an employer's differentiation between people in the hiring process based on an observable characteristic, such as whether or not they have previously filed antidiscrimination lawsuits. Therefore, when ESD 171's refused to hire Zhu because he had

9

previously sued Waterville for racial discrimination, ESD 171 discriminated against Zhu.

Finally, discriminating against a person in "terms or conditions of employment" because of race is clearly a practice forbidden by WLAD, and filing a lawsuit for damages based on such discrimination is clearly opposing that practice. RCW 49.60.180(3). Therefore, Zhu's prior lawsuit against Waterville for racial discrimination in the terms and conditions of his employment constituted opposition to a practice forbidden by WLAD.

Thus, all the elements of RCW 49.60.210(1) are met: An employer, ESD 171, discriminated against a person, Zhu, by refusing to hire him, and the jury determined that it did so because Zhu opposed practices forbidden by WLAD by suing Waterville for racial discrimination.

ESD 171, however, argues that the overall statutory context shows that the legislature intended WLAD's antiretaliation provision to be significantly narrower than WLAD's provisions prohibiting discrimination based on protected characteristics, such that the antiretaliation provision applies only to a plaintiff's current employer and prohibits only adverse actions that affect the plaintiff's preexisting employment status. ESD 171 is correct that discerning a statute's plain meaning requires us to consult the statute itself, "as well as related statutes or other provisions of the same act in which the provision is found." *Campbell & Gwinn,*

*LLC*, 146 Wn.2d at 10. However, ESD 171's interpretation is entirely inconsistent with the plain language, structure, and purpose of WLAD as a whole. We accordingly reject it.

2. As in the rest of WLAD, an "employer" is not limited to the plaintiff's current employer for purposes of RCW 49.60.210(1)

ESD 171 argues that RCW 49.60.210(1)'s reference to "any employer" should be read as "the plaintiff's current employer." Because it is undisputed that ESD 171 was not Zhu's current employer when it refused to hire him, ESD 171 thus argues that RCW 49.60.210(1) cannot apply as a matter of law. We disagree.

For purposes of WLAD, an "employer" is broadly defined as "any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons, and does not include any religious or sectarian organization not organized for private profit." RCW 49.60.040(11). This definition clearly includes prospective employers, and nothing about the statutory context indicates that "any employer" means something different for purposes of the antiretaliation statute than it does for the purposes of the rest of WLAD. *See Champion v. Shoreline Sch. Dist. No. 412*, 81 Wn.2d 672, 676, 504 P.2d 304 (1972) (we assume that when the legislature uses the same word in different parts of a single statutory scheme, that word has the same meaning throughout).

First, ESD 171 correctly notes that RCW 49.60.210(1) does not explicitly refer to prospective employers or job applicants. However, this is not a distinctive

feature of the antiretaliation provision because *none* of WLAD's provisions refer to a "prospective employer" or a "job applicant." Exactly one provision in WLAD refers to a "prospective employee," RCW 49.60.030(3), but none of the other provisions that clearly apply to them do so. For instance, RCW 49.60.180 provides in relevant part:

> It is an unfair practice for *any employer*:
>
> (1) *To refuse to hire any person* because of age, sex, marital status, sexual orientation, race, creed, color, national origin, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability, unless based upon a bona fide occupational qualification.

(Emphasis added.) We have therefore always treated WLAD references to employers to include prospective employers where appropriate. *E.g., Scrivener v. Clark Coll.*, 181 Wn.2d 439, 334 P.3d 541 (2014); *cf. Robinson*, 519 U.S. at 341 (noting that Title VII of the Civil Rights Act of 1964, Pub. L. 88-352, 78 Stat. 241, does not use any "temporal qualifier").

Second, ESD 171 argues that the "functionally similar" test Washington courts have applied in other cases should apply here, thus restricting RCW 49.60.210(1)'s scope to the plaintiff's current employer. This is simply not a context in which that test is appropriately applied. Washington courts employ the "functionally similar" test to determine whether the defendant had sufficient control over the plaintiff's employment to be held personally liable for

discriminatory actions. *See Malo v. Alaska Trawl Fisheries, Inc.*, 92 Wn. App. 927, 930, 965 P.2d 1124 (1998) (coworker without supervisory authority is not personally liable for retaliation). As the entity making the hiring decision, ESD 171 had complete control over Zhu's possible employment, and the "functionally similar" test has no relevance here.

A prospective employer, including ESD 171, easily fits within WLAD's definition of an "employer," and RCW 49.60.210(1) explicitly applies to "any employer." There is nothing in the statutory language or context to indicate that RCW 49.60.210(1) does not mean exactly what it says.

3.  RCW 49.60.210(1) prohibits all forms of discrimination by employers in their capacity as employers

ESD 171 also takes the position that RCW 49.60.210(1) prohibits retaliatory discrimination only in the context of an established employment relationship because the only forms of prohibited retaliation that the statute explicitly mentions are "discharg[ing]" and "expel[ling]," both of which contemplate a preexisting relationship. While the list of prohibited retaliatory actions in RCW 49.60.210(1) is explicitly not exclusive, ESD 171 is correct to the extent that specific statutory terms may reasonably inform courts as to the meaning of broader statutory terms. RCW 49.60.210(1) (it is an unfair practice for an employer "to discharge, expel, *or otherwise discriminate*" (emphasis added)); *Champion,* 81 Wn.2d at 674.

However, ESD 171's proposed interpretation of RCW 49.60.210(1) is an unreasonable application of that general rule.

Certainly, there are some reasonable inferences we might draw from the explicitly listed forms of prohibited retaliatory discrimination. For instance, because RCW 49.60.210(1) explicitly prohibits employers "discharg[ing or] expel[ling]" a person on a retaliatory basis, it might well be reasonable to infer that its prohibition against employers "otherwise discriminat[ing]" is limited to actions that employers undertake in their capacity as employers. It does seem unlikely that the statute contemplates a cause of action against someone who engages in retaliatory discrimination against a purely social acquaintance in a purely social capacity, even if the discriminator otherwise happens to be an employer. This does not help ESD 171, however, because a refusal to hire is unquestionably an action taken by an employer in its capacity as such.

Likewise, it may be reasonable to infer that because RCW 49.60.210(1) makes retaliation an unfair practice of "any employer, employment agency, [or] labor union," the "other person[s]" mentioned as possible defendants might be restricted to entities that are functionally similar to employers, employment agencies, or labor unions. *See Malo,* 92 Wn. App. at 930. This is not necessarily true, as the Court of Appeals has held that it is an unfair practice for a credit union to expel a member because he assisted credit union employees in an

14

antidiscrimination lawsuit, persuasively reasoning that a credit union is an "'other person'" for purposes of RCW 49.60.210(1). *Galbraith v. TAPCO Credit Union,* 88 Wn. App. 939, 951, 946 P.2d 1242 (1997). We need not decide that issue today, however, because ESD 171 is most certainly an employer.

Thus, there are likely some limitations to RCW 49.60.210(1)'s application, but none are relevant here, and the statutory structure and context do not indicate any legislative intent to limit its prohibition on retaliatory discrimination to discrimination within existing employment relationships. Notably, RCW 49.60.210(1) explicitly applies to employment agencies, whose very purpose is to "recruit, procure, refer, or place employees" who are *not* already in an established employment relationship. RCW 49.60.040(12). Moreover, the Court of Appeals has persuasively applied precedent from the Supreme Court of the United States to hold that "'[a]n employment action is adverse if it is harmful to the point that it would dissuade a reasonable employee from making complaints of sexual harassment or retaliation.'" *Boyd v. State,* 187 Wn. App. 1, 15, 349 P.3d 864 (2015) (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). If prospective employers are allowed to engage in retaliatory refusals to hire, a reasonable employee might well be dissuaded from opposing discriminatory practices for fear of being unofficially "blacklisted" by prospective future employers.

ESD 171's interpretation is further undermined by WLAD's statutory structure. Since the time that WLAD was first enacted, it has included the provisions now codified at RCW 49.60.180-.200 and .210. Those provisions have always maintained the same basic form, and they have always been set forth in the same order. *Compare* RCW 49.60.180-.210, *with* LAWS OF 1949, ch. 183 § 7(1)-(4).

First, RCW 49.60.180 defines practices by employers that are unfair when based on a person's protected characteristics, including refusing to hire the person, discharging the person, discriminating against the person in the terms and conditions of employment, and inquiring into the person's protected characteristics in the hiring process.

Second, RCW 49.60.190 defines practices by labor unions that are unfair when based on a person's protected characteristics, including denying the person membership to the union, expelling the person from the union, and discriminating against the person in the union's duty of representation.

Third, RCW 49.60.200 defines practices by employment agencies that are unfair when based on a person's protected characteristics, including refusal to refer the person for employment and inquiring into the person's protected characteristics in connection with prospective employment.

Fourth, RCW 49.60.210 provides that it is an unfair practice for any employer, labor union, or employment agency to discriminate against any person for opposing practices forbidden by WLAD.

This structure strongly suggests that "otherwise discriminat[ing]" for the purposes of RCW 49.60.210(1) must, at a minimum, include the preceding explicitly specified unfair practices, one of which is an employer's refusal to hire. RCW 49.60.180(1).

However, based on its reading of Washington case law, ESD 171 contends that RCW 49.60.210(1) prohibits only an "adverse employment" action or decision that affects the terms or conditions of an established employment relationship. Def.'s Opening Br. at 37. Other published Washington cases considering retaliatory discrimination by employers have used such language, but they were clearly applying the statute in the context of existing employment relationships. *E.g., Allison*, 118 Wn.2d at 86; *Boyd*, 187 Wn. App. at 6; *accord* 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 330.05, at 358-59 (6th ed. 2012). No published Washington case has ever considered, much less rejected, the question of whether RCW 49.60.210(1) prohibits retaliatory discrimination in hiring. We therefore must apply the language of the statute, rather than the language of distinguishable cases. The language of the statute simply does not include the limitations that ESD 171 argues we should read into it.

17

In support of its interpretation, ESD 171 relies on *Warnek v. ABB Combustion Engineering Services, Inc.*, which held that RCW 51.48.025 does not create a cause of action for former employees who claim that their former employer refused to rehire them in retaliation for the employees' having previously filed workers' compensation claims in another state. 137 Wn.2d 450, 972 P.2d 453 (1999). In addition to the clear factual differences from this case, there are key differences in the relevant statutory provisions, and "[a] close comparison of the language of RCW 51.48.025 and RCW 49.60.210 . . . shows that the latter condemns retaliation even more forcefully." *Allison*, 118 Wn.2d at 96.

RCW 51.48.025(2) specifically provides that an "employee" may file a claim against his or her "employer," while RCW 49.60.210(1) provides that retaliation against "any person" is an unfair practice, and RCW 49.60.030(2) provides a cause of action for "[a]ny person" who has been subjected to an unfair practice. And as *Warnek* itself noted, Title 51 RCW does not contain any provision similar to WLAD's statutory mandate for liberal construction. 137 Wn.2d at 461. Because *Warnek* interpreted materially different statutes and its conclusions were based on "the limited facts" presented, we do not extend its holding to the situation presented here. *Id.*

Thus, based on its language, context, and structure, the nonexclusive list of prohibited unfair retaliatory practices in RCW 49.60.210(1) does not indicate a

18

legislative intent to allow retaliatory discrimination in hiring by a prospective employer against a job applicant.

4. The purposes of WLAD would be severely undermined by ESD 171's interpretation

Finally, any plain language interpretation of a WLAD provision must consider the legislature's express statement of purpose and mandate for liberal construction. These considerations erase any possible doubt about the plain meaning of RCW 49.60.210(1) and make it clear that ESD 171's interpretation is not what the legislature intended.

WLAD's purpose is plain: the "elimination and prevention of discrimination in employment, in credit and insurance transactions, in places of public resort, accommodation, or amusement, and in real property transactions." RCW 49.60.010. As relevant to this case, the right to be free from invidious discrimination includes "[t]he right to obtain and hold employment without discrimination." RCW 49.60.030(1)(a). Such discrimination in hiring and employment based on protected characteristics "threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state." RCW 49.60.010. The overarching importance of eradicating such discrimination requires that WLAD's provisions "be construed liberally for the accomplishment of the purposes thereof." RCW 49.60.020.

19

It is well recognized that WLAD, like other laws prohibiting discrimination based on protected characteristics, relies heavily on private individuals for its enforcement. *Allison,* 118 Wn.2d at 86. This reliance would be unrealistic, to say the least, "if this court does not provide them some measure of protection against retaliation." *Id.* at 94; *see Burlington,* 548 U.S. at 61-67 (observing that if anything, antiretaliation provisions should be interpreted more broadly than provisions prohibiting discrimination based on protected characteristics in order to effect their purpose); *Robinson,* 519 U.S. at 346 ("exclusion of former employees from the protection of [the statute] would undermine the effectiveness of Title VII by allowing the threat of postemployment retaliation to deter victims of discrimination from complaining"). And it would make little sense to hold that the legislature intentionally undercut its own purposes in enacting WLAD by adopting an antiretaliation provision that allows employers to compile an unofficial "do not hire" list of individuals who have previously opposed discrimination against themselves and others. However, that is exactly what ESD 171 claims it has the right to do.[4] We cannot believe that the legislature intended to allow such blatant

---

[4] At oral argument the court asked counsel for ESD 171, "You're saying the legislature has decided that, and they've said that an employer can discriminate and not hire anyone who's ever complained about, or testified on behalf of anyone who's been, mistreated in employment?" Wash. Supreme Court oral argument, *Jin Zhu v. N. Centr. Educ. Serv. Dist. – ESD 171* , No. 94209-9 (Sept. 12, 2017), at 39 min., 20 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. Counsel acknowledged that was its position.

retaliatory discrimination in direct contravention of everything WLAD is meant to accomplish.

RCW 49.60.210(1)'s plain language, read in context, does make retaliatory refusal to hire an unfair practice, and RCW 49.60.030(2) plainly provides that any person who has been subjected to an unfair practice has the right to bring a civil cause of action. Therefore, Zhu's claim that ESD 171 refused to hire him in retaliation for his prior opposition to Waterville's discriminatory practices stated a viable cause of action in accordance with the plain language of WLAD. Because there is no ambiguity, we need not reach ESD 171's arguments about legislative history, cases from other jurisdictions, and definitions of nonstatutory words.

The answer to the certified question is unambiguously yes.

B.     Zhu is entitled to attorney fees

Because Zhu is the prevailing party, we grant his request for reasonable attorney fees on review pursuant to RAP 18.1(a) and RCW 49.60.030(2). We defer to the district court to determine the appropriate amount of fees when it enters final judgment for Zhu.

## CONCLUSION

In accordance with the language, context, and purpose of WLAD, we hold that RCW 49.60.210(1) prohibits prospective employers from engaging in

retaliatory discrimination against job applicants. Therefore, the answer to the certified question is yes.

Jin, J

WE CONCUR:

Fairhurst, C.J.

Stephens, J

Johnson, J

Wiggins, J

Madsen, J

Gordon McCloud, J.

Owens, J

González, J.